UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 18CR10225 |
| | ) | |
| v. | ) | |
| | ) | VIOLATIONS: |
| RAYMOND K. MONTOYA, | ) | |
| | ) | Wire Fraud |
| Defendant. | ) | (18 U.S.C. § 1343) |
| | ) | |
| | ) | Mail Fraud |
| | ) | (18 U.S.C. § 1341) |
| | ) | |
| | ) | Unlawful Monetary Transactions |
| | ) | (18 U.S.C. § 1957(a)) |
| | ) | |
| | ) | Aiding and Abetting |
| | ) | (18 U.S.C. § 2) |
| | ) | |
| | ) | Forfeiture Allegations |
| | ) | (18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1) |
| | ) | and 28 U.S.C. § 2461) |

## INFORMATION

The United States Attorney charges that:

At all times relevant to this Information:

### Individuals and Entities

1.      Defendant RAYMOND K. MONTOYA ("MONTOYA") was an individual who resided in Massachusetts.

1

2. The RMA Strategic Opportunity Fund, LLC ("RMA FUND") was a Delaware Limited Liability Company ("LLC") that MONTOYA created in or about May 2007 and registered as a foreign LLC in Massachusetts in or about March 2009.

3. Person A was an employee of the RMA FUND in Boston, Massachusetts.

4. Victims 1 through 5 were investors with MONTOYA and the RMA FUND and were among the victims of the fraud scheme set forth herein.

## The RMA FUND

5. Beginning by at least 2009 and continuing until June 2017, MONTOYA managed and operated the RMA FUND, a pooled investment hedge fund based in Boston, Massachusetts. For the most part, the individuals who invested with MONTOYA and the RMA FUND (collectively, "the Victims") were either family, friends, or indirect acquaintances of MONTOYA, residing in Ohio and California, among other places.

6. After the Victims agreed to invest, MONTOYA directed them to transfer their funds to an account at Citizens Bank in the name of the RMA GROUP, INC. ("the RMA FUND Citizens Account"). The Victims transferred millions of dollars of their personal savings into the RMA Fund, rolled over their 401(k) retirement plans, and opened college savings accounts using the RMA FUND.

7. After making an investment, MONTOYA and the RMA FUND sent out monthly statements – through the U.S. mail and e-mail in interstate commerce – to the Victims that purported to reflect the current value of their investment accounts.

**The Scheme to Defraud**

8.     From at least 2009 and continuing until about June 2017, MONTOYA devised and executed a scheme to defraud the Victims of millions of dollars they invested with the RMA FUND.

9.     Through a series of fraudulent and false representations, MONTOYA grossly overstated the financial success of the RMA FUND. Through the RMA FUND's updates and written statements to prospective investors, MONTOYA claimed that the RMA FUND managed more than $4 billion in assets and had a cumulative rate of return substantially higher than that of the Standard & Poor's 500 stock index ("S&P 500"). In fact, the amount of assets that the RMA FUND managed was less than $50 million. Furthermore, by approximately 2012, instead of earning gains, the RMA FUND was incurring losses, and by 2015 and 2016 its losses were substantial.

10.    MONTOYA also misrepresented how he was managing the RMA FUND. Among other false representations, MONTOYA claimed to have proprietary software that could predict minute-to-minute price movements in securities. The RMA FUND never had any such software. Instead, MONTOYA and a close family member did most of the trading based on their own market research.

11.    MONTOYA also told the Victims that he would invest their money in stocks and bonds, but only invested a portion of the Victims' money, while diverting the rest—totaling millions of dollars—to business and personal bank accounts he controlled. He then used

that money for personal expenses such as luxury vehicles and tuition and mortgage payments for his family members.

12. In furtherance of his fraud scheme, MONTOYA fabricated account statements and related documents in order to lull investors into a false sense of security about the status of their investments. MONTOYA then caused these fabricated account statements to be mailed and e-mailed to the Victims.

### Victims 1 and 2

13. Victims 1 and 2 are a married couple in Ohio. Between in or about July 2009 and December 2016, based on MONTOYA's fraudulent representations described above, Victim 1 and 2 invested more than $12 million with MONTOYA and the RMA FUND. In addition, Victims 1 and 2 have adult children who invested with the RMA FUND and MONTOYA.

14. As part of their investment, on or about September 27, 2013, Victims 1 and 2 wired approximately $300,000 from their joint bank account in Ohio to the RMA Fund Citizens Account in Massachusetts.

15. On or about August 19, 2014, MONTOYA deposited four checks totaling approximately $1,036,147 from Victims 1 and 2 into the RMA FUND Citizens Account. Instead of investing the funds as he had promised, MONTOYA used approximately $1,000,000 from the four checks to open two personal bank accounts in his and a close family member's name ("CITZ-2213" and "CITZ-2221") with a deposit of $500,000 into each account.

16. On or about October 27, 2014, MONTOYA transferred $900,000 from CITZ-2221 (including approximately $500,000 from Victims 1 and 2) back to the RMA FUND Citizens Account.

17. On or about October 28, 2014, MONTOYA used approximately $1,003,212, including at least $500,000 from Victims 1 and 2, to pay off a mortgage for one of his family members.

18. Over the years that Victims 1 and 2 invested with the RMA FUND, MONTOYA fabricated accounts statements for them that contained false information about their account balance and omitted the fact that MONTOYA had misappropriated funds from Victims 1 and 2.

### Victim 3

19. Victim 3 resides in Ohio. Before Victim 3 invested with the RMA FUND in approximately 2016, MONTOYA traveled to Victim 3's residence in Ohio and convinced Victim 3 to invest her retirement savings with the RMA FUND. Among other false representations, MONTOYA told Victim 3 that the RMA FUND was generating positive returns higher than those of the S&P 500, when in fact, by 2016, the RMA FUND was incurring substantial losses.

20. Between in or about June 2016 and March 2017, based on MONTOYA's fraudulent representations, Victim 3 invested more than $800,000 with MONTOYA. For example, on or about March 10, 2017, Victim 3 caused a cashier's check dated March 8, 2017 for approximately $160,000 to be mailed to MONTOYA through the U.S. mail. MONTOYA deposited the check into the RMA FUND Citizens Account.

21. In addition, in furtherance of the scheme to defraud, in 2016 MONTOYA falsely assured Victim 3 that the RMA FUND was earning substantial gains when in fact it was incurring substantial losses. For example, in a text message that MONTOYA wrote to Victim 3 in or about November 2016, MONTOYA falsely told Victim 3 that the RMA FUND had *"gained 3.01% in Oct. [and] had some lucky trades during the earnings season."*

### Victim 4

22. Victim 4 resides in California. In or about 2017, MONTOYA purchased airline tickets for Victim 4 and other potential investors to fly to the Boston area and tour the RMA FUND's office in Boston. During the tour, MONTOYA falsely told Victim 4 and other potential investors that the RMA FUND had proprietary investment software that could correctly predict stock price changes with about 65 percent accuracy and purported to give a demonstration of the software. Thereafter, in or about on or about March 6, 2017, Victim 4 invested in the RMA FUND by mailing a cashier's check for approximately $25,000 to MONTOYA and the RMA FUND.

### Victim 5

23. Victim 5 resides in Ohio. In or about late 2016, Victim 5 received a letter from the RMA FUND, dated December 29, 2016, which purported to show that the RMA FUND's earnings were substantially higher than those of the S&P 500 for the years 2008 through 2016. In fact, by about 2012, the fund was incurring losses and by 2016, those losses were substantial. Based on these fraudulent representations, Victim 5 invested in the RMA FUND. Between on or about January 10, 2017 and March 10, 2017, Victim 5 wrote four checks payable to the RMA

FUND totaling approximately $700,000 and based on MONTOYA's directions, sent the checks to MONTOYA personally through the U.S. mail.

### MONTOYA's Use of Victim Funds for Personal Expenditures

24. On or about the dates below, MONTOYA wrote checks from the RMA FUND Citizens Account, using the Victims' funds, for personal expenditures including the repayment of student loans, car loans, residential mortgages, and the purchase of luxury vehicles.

    a. Between in or about February 2011 and June 2011, MONTOYA wrote three checks totaling approximately $202,908 for mortgage payments for one of his family members.

    b. On or about June 23, 2011, MONTOYA wrote a check for approximately $17,999 for a relative's medical school loan.

    c. On or about July 21, 2011, MONTOYA wrote a check for approximately $100,000 for a down payment on a 2010 Rolls Royce Ghost sedan.

    d. On or about August 29, 2012, MONTOYA wrote a check for approximately $22,717 for one of his relative's medical school loans.

    e. On or about May 9, 2014, MONTOYA wrote a check for approximately $10,100 for one of his relative's medical school loans.

    f. On or about June 9, 2014, MONTOYA wrote a check for approximately $100,000 for a down payment on a 2014 Porsche 911 Turbo S.

    g. On or about April 8, 2015, MONTOYA wrote a check for approximately $50,000 for a down payment on a 2016 Lamborghini Aventador.

## COUNTS ONE THROUGH THREE
(18 U.S.C. § 1343 – Wire Fraud; 18 U.S.C. § 2 – Aiding and Abetting)

25. The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 25 of this Information and further charges that:

26. On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

**RAYMOND K. MONTOYA,**

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, as set forth below:

| Count | Approximate Date | Wire |
|---|---|---|
| 1 | September 27, 2013 | $300,000 transfer from Victim 1 and 2's joint account in Ohio to the RMA FUND Citizens Account in Massachusetts, |
| 2 | October 28, 2014 | $1,003,212 transfer from the RMA FUND Citizens Account in Massachusetts to JP Morgan Chase in New York |
| 3 | November 2016 | Text Message from MONTOYA to Victim 3 regarding "lucky trades" in October 2016. |

All in violation of Title 18, United State Code, Sections 1343 and 2.

## COUNTS FOUR THROUGH EIGHT
### (18 U.S.C. § 1341 – Mail Fraud; 18 U.S.C. § 2 – Aiding and Abetting)

27. The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 25 of this Information and further charges that:

28. On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

**RAYMOND K. MONTOYA,**

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did for the purpose of executing and attempting to execute the scheme, knowingly take and receive from an authorized depository for mail the following:

| Count | Approximate Date | Mailing |
|---|---|---|
| 4 | January 10, 2017 | Check from Victim 5 for $200,000 sent to MONTOYA through the U.S. mail |
| 5 | January 12, 2017 | Check from Victim 5 for $300,000 sent to MONTOYA through the U.S. mail |
| 6 | January 23, 2017 | Check from Victim 5 for $100,000 sent to MONTOYA through the U.S. mail |
| 7 | March 10, 2017 | Check from Victim 5 for $100,000 sent to MONTOYA through the U.S. mail |
| 8 | March 10, 2017 | Check from Victim 3 for $160,000 sent to MONTOYA through the U.S. mail. |

All in violation of Title 18, United States Code, Section 1341 and 2.

## COUNTS NINE AND TEN
## (Unlawful Monetary Transaction
## - 18 U.S.C. § 1957(a))

29.  The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 25 of this Information and further charges that:

30.  On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

**RAYMOND K. MONTOYA,**

knowingly engaged and attempted to engage in a monetary transaction affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, the withdrawal and transfer of funds from a financial institution by check as identified below, such property having been derived from specified unlawful activity, that is, wire fraud and mail fraud, as alleged in Counts One through and Ten of this Information:

| Count | Approximate Date | Monetary Transaction |
|---|---|---|
| 9 | June 9, 2014 | Check drawn from the RMA FUND Citizens Account for approximately $100,000 for a down payment for the purchase of a 2014 911 Porsche Turbo, bearing VIN WP0AD2A97ES167372. |
| 10 | April 8, 2015 | Check drawn from the RMA FUND Citizens Account for approximately $50,000 for a down payment toward the purchase of a 2016 Lamborghini Aventador, bearing VIN ZHWUF3ZD3GLA04750. |

All in violation of Title 18, United States Code, Section 1957(a).

## FRAUD FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The United States Attorney further alleges that:

31. Upon conviction of one or more of the offenses alleged in Counts One through Eight of this Information,

### RAYMOND K. MONTOYA,

defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to such offenses. The property to be forfeited includes, but is not limited to, the following:

(a) A sum of money equal to the total amount of proceeds the Defendant obtained (directly or indirectly) as a result of the offenses, which may be entered in the form of an Order of Forfeiture (Money Judgment);

(b) a 2001 Mercedes-Benz SL500 coupe bearing VIN: WDBFA68F21F198421;

(c) a 1999 Ferrari F355B coupe bearing VIN ZFFXR41A5X0115854;

(d) a 2006 Ferrari Spider convertible bearing VIN ZFFEW59A560151021;

(e) a 2006 Mercedes-Benz S500 bearing VIN WDBNG84JX6A480908;

(f) a 2016 Lamborghini Aventador coupe bearing VIN ZHWUF3ZD3GLA04750;

(g) a 2010 Rolls Royce Ghost sedan bearing VIN SCA664S56AUX49024;

(h) a 2002 BMW M3 coupe bearing VIN WBSBL93432JR13361;

(i) a 1998 Porsche 911 convertible bearing VIN: WP0CA2994WS340739;

(j) a 2004 BMW X5 station wagon VIN 5UXFA135X4LU45661;

(k) a 2014 Porsche bearing VIN WP0AD2A97ES167372;

(l) a Ferrari F355B coupe bearing VIN ZFFXR41A5X0115854

(m) a 2001 Porsche 911, coupe, bearing VIN: WP0AB29981S687617;

(n) a 2011 Mercedes-Benz S550 sedan bearing VIN WDDNG8GB8BA366735;

(o) all funds on deposit in Citizens Bank account number 1302333582 under the name RM ASSETS;

(p) all funds on deposit in Citizens Bank account number 1320860343 under the name RMA Strategic Opportunity;

(q) all funds on deposit in Citizens Bank account number 1313823241 under the name Resource Managed Assets;

(r) all funds on deposit in Citizens Bank account number 1313823292 under the name Research Magnate Advisors;

(s) all funds on deposit in E*Trade account number 35886451 under the name RMA Strategic Opportunity;

(t) all funds on deposit in E*Trade account number 36211522 under the name Research Magnate Advisors LLC;

(u) all funds on deposit in E*Trade account number 36211523 under the name Resource Managed Assets LLC;

(v) all funds on deposit in E*Trade account number 36211753 under the name RMA Group Consultants Inc.;

(w) all funds on deposit in E*Trade account number 64230185, under the name Raymond Kabigting Montoya and Alma Ungson Montoya;

(x) a Patek Phillipe perpetual chronograph men's wristwatch with brown leather strap seized from 26 High Rock Way, Allston, Massachusetts on or about August 24, 2017;

(y) a yellow gold Bulgari men's wristwatch with round and square case, Assiona champagne dial and deployment leather strap seized from 26 High Rock Way, Allston, Massachusetts on or about August 24, 2017;

(z) a doubled sided, limited edition, Patek Phillipe men's wristwatch, Sky Moon 5002P Tourbillon seized from 26 High Rock Way, Allston, Massachusetts on or about August 24, 2017;

(aa) a sport "Bell & Ross" waterproof men's wristwatch with rubber band and stainless steel black case with orange markers seized from 26 High Rock Way, Allston, Massachusetts on or about August 24, 2017;

(bb) a stainless steel Louis Vuitton men's wristwatch with rust dial chronograph and brown leather strap seized from 26 High Rock Way, Allston, Massachusetts on or about August 24, 2017;

(cc) $17,500 in U.S. currency seized from 26 High Rock Way, Allston, Massachusetts on or about August 24, 2017; and

(dd) $8,500 in U.S. currency seized from 26 High Rock Way, Allston, Massachusetts on or about August 24, 2017.

32. If any of the property described in paragraph 36 above, as a result of any act or omission of the defendant,

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

13

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 36 above.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

## MONEY LAUNDERING FORFEITURE ALLEGATION
(18 U.S.C. § 982(a)(1))

The United States Attorney further alleges that:

33. Upon conviction one or more of the offenses in violation of Title 18, United States Code, Section 1957, set forth in Counts Nine and Ten of this Information,

### RAYMOND K. MONTOYA,

defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offenses, and any property traceable to such property.

34. If any of the property described in Paragraph 38, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of the defendant --

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 38 above.

All pursuant to Title 18, United States Code, Section 982(a)(1).

                                            ANDREW E. LELLING
                                            United States Attorney

                           By: _____
                                            Neil J. Gallagher, Jr.
                                            Assistant U.S. Attorney

Dated: 7-16-2018