UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 18-10225-GAO

UNITED STATES OF AMERICA,

v.

RAYMOND MONTOYA,
Defendant.

OPINION AND ORDER
March 24, 2022

O'TOOLE, D.J.

In March 2019, the defendant Raymond Montoya was sentenced to 175 months of incarceration after pleading guilty to wire fraud, mail fraud, and money laundering. He is presently incarcerated at USP Lompoc in Lompoc, California, and is scheduled to be released in 2031. On March 22, 2021, the defendant filed a motion requesting compassionate release under 18 U.S.C. § 3582. The government opposed the motion. The defendant claims that his age and poor health make him susceptible to severe illness and death from COVID-19, and that his continued incarceration puts him at high risk of serious illness. He argues that his need to avoid that risk justifies his early release. For the reasons detailed below, his motion is denied.

Compassionate release can be requested "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf . . . ." 18 U.S.C. § 3582(c)(1)(A). A court may grant compassionate release if it finds "extraordinary and compelling reasons" to do so after considering the sentencing factors articulated in 18 U.S.C. § 3553(a). Id. § 3582(c)(1)(A)(i). Those factors include: 1) the nature of the offense; 2) the history

and characteristics of the defendant; 3) the need to deter future misconduct, punish for the offense, and protect the public; 4) the kinds of sentences available and the applicable sentencing range; 5) the need to avoid disparities among like defendants; 6) the need to provide restitution to victims; and 7) any pertinent policy statement issued by the Sentencing Commission. Id. § 3553(a).

According to the Sentencing Commission, an "extraordinary or compelling reason" for compassionate release exists if the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S. Sent'g Guidelines Manual § 1B1.13 (U.S. Sent'g Comm'n 2018).[1] During the COVID-19 pandemic, courts have released defendants who faced a high risk of contracting COVID-19 in prison and had medical conditions that made them extremely susceptible to severe illness or death due to COVID-19. See, e.g., United States v. Feliz, No. 17-cr-185-LM-1, 2021 WL 4521967, at *3–4 (D.N.H. Oct. 4, 2021) (releasing a defendant with leukemia); United States v. Ihejiere, No. 19-cr-077-LM-1, 2021 WL 4122583, at *2–3 (D.N.H. Sept. 9, 2021) (releasing an immunocompromised kidney transplant recipient with obesity and hypertension); United States v. Tidwell, 476 F. Supp. 3d 66, 73–75 (E.D. Pa. 2020) (releasing a defendant with prostate cancer, hepatitis C, and hypertension).

Montoya is seventy-three years old and suffers from stage three kidney disease, anxiety, high cholesterol, hypertension, and gout. He is not undergoing dialysis treatment. While his age

---

[1] Most circuits have held that § 1B1.13 is not binding as to defendant-filed compassionate release motions because it predates the statute that enabled defendants to bring such motions. The First Circuit recently declined to resolve that issue. United States v. Saccoccia, 10 F.4th 1, 7–8 (1st Cir. 2021). Courts in this circuit have found § 1B1.13 "helpful," even if it may not be "conclusive." E.g., United States v. Stone, No. 08-cr-00006-JAW, 2021 WL 5146183, at *5 n.3 (D. Me. Nov. 4, 2021).

puts him at increased risk of severe illness due to COVID-19, he has not shown that he suffers from a "serious physical or medical condition . . . that substantially diminishes [his ability] to provide self-care within the environment of a correctional facility." [2] USSG § 1B1.13.

Patients with stage three kidney disease who are not undergoing dialysis typically experience slightly diminished kidney function, low risk of kidney failure, and either no symptoms or very mild symptoms. See Stages of Kidney Disease, Am. Kidney Fund, https://www.kidneyfund.org/all-about-kidneys/stages-kidney-disease (last updated Nov. 22, 2021). The defendant's own medical records support that same prognosis, and they consequently fail to justify his early release. By contrast, defendants with kidney disease who have recently been granted compassionate release either have required dialysis, had very advanced kidney disease, or were severely immunocompromised. See United States v. Seshan, No. 14 Cr. 620 (JFK), 2021 WL 5861228, at *3–5 (S.D.N.Y. Dec. 10, 2021) (releasing an immunocompromised kidney transplant recipient); Ihejiere, 2021 WL 4122583, at *2–3; United States v. DeBartolo, Cr. No. 14-016 WES, 2020 WL 3105032, at *1–2 (D.R.I. June 11, 2020) (releasing a defendant undergoing dialysis for stage three kidney disease). The defendant's other conditions also fall short of justifying release. Anxiety and gout are not "serious" in the necessary sense. High cholesterol and hypertension reflect heart health, but they do not justify early release on their own; courts have typically released hypertensive defendants only when they also suffered from more serious conditions. See Ihejiere, 2021 WL 4122583, at *3; Tidwell, 476 F. Supp. 3d at 73–75.

The interests in deterrence and punishment articulated in § 3553(a) counsel against early release. When the defendant filed this motion, he had served approximately 12% of a 175-month

---

[2] The defendant has been fully vaccinated against COVID-19. His vaccination status does not preclude him from qualifying for early release, but it does mitigate some of the risk he faces in prison.

3

sentence. He differs significantly from other defendants who were granted compassionate release because of the risks associated with their kidney disease. See Seshan, 2021 WL 5861228, at *3–5 (releasing a kidney transplant recipient with less than one year remaining on his sentence); Ihejiere, 2021 WL 4122583, at *4 (releasing a kidney transplant recipient who had served 65% of his sentence); DeBartolo, 2020 WL 3105032, at *1–2 (releasing a defendant undergoing dialysis who had served 80% of his sentence). Montoya's was a significant offense; many victims were significantly harmed by his Ponzi scheme, and a lengthy sentence was amply warranted. Compassionate release at this point would undermine the punitive and deterrent goals of sentencing. Cf. United States v. Nuzzolilo, 517 F. Supp. 3d 40, 44 (D. Mass. 2021) (denying compassionate release to a defendant with type two diabetes and obesity because he had served just nine months of a 134-month sentence).

While Lompoc in the past experienced more severe COVID-19 outbreaks than many other federal facilities, the Bureau of Prisons website indicates that there are presently no active cases at Lompoc, and that most diagnosed cases eventually ended with recovery. COVID-19 Cases, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last updated Mar. 23, 2022). The BOP also reports that Lompoc is currently operating as a Level 1 facility with "minimal modifications" due to COVID-19. USP Lompoc, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/lom/ (last visited Mar. 22, 2022).

The defendant has failed to identify "extraordinary or compelling reasons" justifying his early release. For the foregoing reasons, the Motion for Compassionate Release is DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge